## GASTON et al. v. NEW LONDON NORTHERN R. CO.

District Court, D. Connecticut. May 29, 1929.

No. 3306.

Cadwalader, Wickersham & Taft, of New York City, and James E. Wheeler, of New Haven, Conn. (Cornelius W. Wickersham and Paxton Blair, both of New York City, of counsel), for plaintiffs.

Robert G. Dodge, of Boston, Mass., and Brown & James, of Norwich, Conn., for defendant.

BURROWS, District Judge. On October 17, 1891, the New London Northern Railroad Company, lessor, leased to the Consolidated Railroad Company of Vermont a certain railroad extending from its terminus in New London, Conn., to its terminus in the state of Vermont, together with equipment and other property, upon the terms and conditions fully set forth in the lease.

On December 9, 1891, the Consolidated Railroad Company of Vermont assigned all its right, title, and interest in, to, and under said lease to the Central Vermont Railway Company, a Vermont corporation, with the consent of the defendant, New London Northern Railroad Company, the lessor. The Central Vermont Railway Company went into possession of all the leased property at that time.

On or about March 20, 1896, receivers were appointed for the Central Vermont Railway Company, who took possession of the leasehold interest mentioned above, and said leasehold interest was, on or about March 21, 1899, sold to two individuals, who later, on April 20, 1899, assigned and conveyed said leasehold interest to said Central Vermont Railway Company. Said Railway Company has since entered into possession and continued in such possession until the appointment of the plaintiffs as receivers of said railway; by virtue of said conveyance of April 20, 1899, the Central Vermont Railway Company succeeded to all the rights, interests, powers, privileges, and obligations of the lessee of the above-mentioned lease dated October 17, 1891.

On or about December 12, 1927, the plaintiffs herein were appointed receivers of the Central Vermont Railway Company, and entered into possession of all its assets.

Paragraph 4 of the lease of October 17, 1891, reads as follows: "And the lessee further covenants with the lessor to pay as they become due during each year of said term, all taxes, rates and assessments which may be lawfully imposed or assessed in any way upon the lessor or lessee with reference to the premises and property hereby demised, and also upon the capital stock of the lessor, its indebtedness, franchises and revenues or on said rental, whether such impositions be made by the United States or any of the States, or any municipal corporation, so that the lessor shall be saved harmless from any tax, rate or assessment as aforesaid, and from any expense or cost in the premises."

Paragraph 8 of the lease provides as follows: "This lease is upon the express proviso and condition that in case the lessee shall fail for thirty (30) days to make any of the payments of rent hereinbefore provided or to pay any of the taxes, rates, rents, charges and assessments above specified, or shall fail to perform any of the covenants or stipulations of this lease heretofore or hereinafter set forth, and shall continue in such default after written notice thereof by the lessor for thirty (30) days, then this lease shall expire and terminate, at the option of the lessor, who may re-enter and take possession of the premises and property as above provided; and the lessee hereby expressly stipulates to waive all other notice, demand or entry, statutory or otherwise."

It further appears from an examination of the lease that the lessee was to pay to the

lessor for a period of 99 years a yearly rental of $210,000, in equal monthly payments of $17,500 each. Under said lease, the lessor let and demised to the lessee its entire railroad equipment, together with its rights, privileges, and franchises of every description, together with all the tolls, income, issues, and profits to be derived from the operation of the demised railroad property. It was further agreed that the lessee should provide a suitable room in the Union Passenger Station at New London as an office for the lessor during the continuance of the lease, properly lighted and heated, and should provide transportation on the demised railroad for the directors of the lessor not exceeding nine in number, and, further, that the lessor would pay to the lessee the sum of $1,000 in each year during the continuance of the lease for the purpose of keeping up its organization.

For the year 1917, and for every year thereafter, the United States government assessed income taxes against the lessor. Up to the time of the institution of this action, the lessee, the plaintiffs, had paid to the lessor, the defendant, sums amounting to $157,-933.43, being the amounts assessed up to that time as income taxes by the government; the payments being made under protest and without prejudice to the right of the railway company to recover such payments in any suit based on the claim that it was not obligated to pay the taxes. On or about July 13, 1928, the plaintiffs, as receivers, made a further payment of $10,000, also under protest and without prejudice as aforesaid.

In this suit the lessee seeks to recover the amounts so paid, with interest, on the ground that the lessee was not, under the lease, obligated to pay said taxes, and that said payments were made under compulsion and duress, and to avoid the forfeiture of the lease.

The defendant, the lessor, demurs to the complaint, contending that the language of paragraph 4 of the lease imposes upon the lessee the obligation to pay the income taxes imposed upon the lessor by the government.

The question raised by the demurrer is this: Is it the duty of the lessee and its successors in interest under this lease to pay the federal income taxes since imposed by the government upon the lessor?

The plaintiffs claim that the lessee is not bound to pay the lessor's income taxes, on the ground that such taxes were not included within the meaning of paragraph 4 of the lease, and that payment of income taxes was not within the intention of the parties when the lease was made. The plaintiffs lay great stress on the fact that, at the time of the making of the lease, there was no federal income tax law in existence; that the federal

income tax law which was subsequently passed was held to be unconstitutional; and that no valid federal income tax law came into being until after the adoption of the Sixteenth Amendment in 1913. Under such circumstances, it is claimed, federal income taxes are not within the purview of the lease.

I am unable to agree with the contention of the plaintiffs after a careful examination of the lease. It will be noted that paragraph 4 provides, among other things, that the lessee "further covenants with the lessor to pay as they become due during each year of said term, *all taxes, rates and assessments* * * * with reference to the premises and property hereby demised, and also upon the capital stock of the lessor, its indebtedness, franchises and *revenues,* or *on said rental,* whether such *impositions be made by the United States* * * * so that the lessor shall be saved harmless from *any tax, rate or assessment* as aforesaid, and from any *expense* or *cost* in the premises."

In my opinion, it was the intention of the parties, which of course is controlling, to provide that the lessor was to be saved harmless as far as any tax of any kind or nature was concerned which might, during the period of the lease, be imposed by the federal government, the states, or municipalities. In other words, the paragraph was as broad and general a statement of assumption of liability for payment of taxes of every description as could have been made, and was intended to cover, not only taxes under tax laws then in existence, but any taxes which might be imposed by any of the sovereignties during the term of the lease.

The plaintiffs have cited a number of cases in the effort to support their claim that income taxes are not included and cannot be included under the wording of paragraph 4 of the lease. I have examined these cases with care. From my interpretation of paragraph 4 of the lease to the effect that it covers all possible taxes which might be assessed against the lessor, I find it unnecessary to discuss the cases cited by the plaintiffs as well as the fine distinctions drawn by them between different types of taxes.

I hold that the income taxes assessed against the lessor in this case are included within the meaning of paragraph 4. My interpretation of this paragraph is strengthened by the other provisions of the lease. It is highly significant that the lessor handed over to the lessee practically its entire holdings, assets, and properties, and, further, that it was stipulated that the lessee furnish an office for the lessor, and pay a yearly sum to maintain the lessor's organization during the continuance of the lease.

As the intention of the parties is controlling, and as the language of the lease in this case is to me entirely unambiguous and clear, I am of the opinion that it is the duty of the lessee and its successors, the plaintiffs in this action, to pay all federal income taxes imposed upon the lessor. The demurrer is therefore sustained, and it is so ordered.